IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 1:25-cv-03040-RBJ

HUGO CERVANTES ARREDONDO,

       Petitioner,

v.

JUAN BALTAZAR, ROBERT HAGAN,
KRISTI NOEM, TODD LYONS,
PAMELA BONDI,
in their official capacities,

       Respondents.

---

## ORDER

---

      This case comes back before the Court on movant Hugo Cervantes Arredondo's (movant or Mr. Cervantes Arredondo) motion to enforce judgment (motion). ECF No. 23. Movant requests that this Court order his immediate release from immigration custody or, in the alternative, order that he be afforded another bond hearing at which the burden of proof to demonstrate flight risk is properly placed on respondents. *Id.* at 2. Respondents oppose this motion. ECF No. 24.

      For the reasons that follow, the Court GRANTS the motion to the extent that the movant must be provided a new bond hearing at which time, both parties may submit additional evidence. At the conclusion of the hearing, if the immigration

1

judge (IJ) again denies bond, the IJ must set forth in its ruling, orally and/or in writing, what evidence *presented by respondents* carried their burden of proof to demonstrate that movant is a danger to the community or a flight risk by clear and convincing evidence.

## Background

On June 26, 2025, U.S. Immigration and Customs Enforcement (ICE) arrested Mr. Cervantes Arredondo, a noncitizen from Mexico, and detained him pursuant to 8 U.S.C. § 1225(b)(2)(A) of the Immigration and Nationality Act (INA), which mandates detention during removal proceedings.

On September 26, 2025, Mr. Cervantes Arredondo filed a petition for a writ of habeas corpus and a concurrent motion for a temporary restraining order, arguing that his detention under this § 1225(b)(2)(A) was unlawful. ECF Nos. 1, 8. He contended that his detention was instead governed by 8 U.S.C. § 1226(a), which authorizes discretionary release on bond or other release conditions. *Id.*

On October 31, 2025, the Court granted the petition over respondents' opposition. ECF Nos. 17, 21. The Court denied immediate release but ordered respondents to provide Mr. Cervantes Arredondo with a bond hearing before an IJ within seven days. ECF No. 21 at 10-11.

Importantly, the Court ordered that, at the bond hearing, the Department of Homeland Security (DHS) would bear the burden of proof to show, by clear and

convincing evidence, that Mr. Cervantes posed "a danger to the community or a flight risk such that he should remain in detention." *Id.* at 9. The Court concluded that allocating this burden to the government was consistent with due process, given that Mr. Cervantes Arredondo had been subjected to mandatory detention under the wrong statute for several months, impinging his core liberty interest. *Id.*

On November 4, 2025, an IJ held a bond hearing. *See* ECF No. 22 at 2. That same day, as detailed below, the IJ issued a written decision denying release on bond or other conditions. ECF No. 22-1 at 6-12 (Memorandum of Bond Decision and Order). The IJ found "insufficient evidence" to establish that Mr. Cervantes Arredondo posed a danger to the community but concluded that he presented "an unacceptable flight risk." *Id.* at 9-10.

Mr. Cervantes Arredondo then filed the instant motion to enforce the Court's judgment. ECF No. 23. He alleges that respondents "failed to comply with the Court's order" because the conduct of the hearing and the IJ's decision demonstrate that DHS was not held to its burden of proving danger or flight risk by clear and convincing evidence. *Id.* at 2. Instead, he says, the burden was effectively shifted to him to show that he was neither a danger nor a flight risk. *Id.* He seeks an order directing his immediate release or another bond hearing "consistent with the Court's instructions," including a requirement that the IJ "make an oral finding at the conclusion of the government's case as to whether the government has met its

3

...
...

burden." *Id.* Respondents opposed the motion, and Mr. Cervantes Arredondo filed a reply. ECF Nos. 24, 25.

## Analysis

1. **The Court has jurisdiction and exhaustion is not required.**

Before turning to the merits of movant's claim, the Court must address two threshold procedural arguments raised by respondents. Respondents claim that: (1) this Court lacks jurisdiction to order the requested relief because the IJ's bond determination was discretionary and therefore unreviewable under the INA; and (2) even if jurisdiction exists, movant failed to exhaust his administrative remedies by taking an appeal to the Board of Immigration Appeals (BIA), precluding relief. *See* ECF No. 24 at 2.

With respect to jurisdiction, the Court possesses inherent authority to enforce its own orders. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("[C]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose … submission to their lawful mandates") (internal citation omitted). This authority derives not "by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)).

Had Mr. Cervantes Arredondo been denied release following a bond hearing conducted in the ordinary course of removal proceedings, then he would, of course,

4

be without recourse to this Court.  That is what the INA forbids.  *See* 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under [§ 1226(a)] regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole").  The cases cited by respondents arise in this procedural posture.  *See Mwangi v. Terry*, 465 Fed.App'x 784, 786-87 (10th Cir. 2012); *Molina v. Choate*, No. 19-cv-00207-LTB, 2019 WL 13214049, at *4 (D. Colo. Mar. 22, 2019).

However, that is not what happened here.  Respondents mandatorily detained movant for months under § 1225(b)(2)(A).  This Court granted habeas relief, ordered that he be provided a bond hearing, and specified procedural requirements necessary to satisfy due process under the circumstances.[1]  The Court retains jurisdiction to ensure compliance with that order.  *Chambers*, 501 U.S. at 43.  Indeed, the Court directed respondents to file a status report following the bond hearing identifying whether bond was granted and, if denied, the reasons for denial.  ECF No. 21 at 11.  The Court would not have imposed this reporting requirement if it lacked authority to address noncompliance with its mandate.

As movant correctly observes, the Court would surely have jurisdiction to enforce its order had the IJ explicitly stated that he was not placing the burden of

---

[1] While respondents opposed Mr. Cervantes Arredondo's petition and motion on the merits, they did not dispute this Court's jurisdiction to order the requested relief.

5

proof on the government or was applying a lower standard. ECF No. 25 at 2. That jurisdiction is not defeated merely because the correct words appear in the IJ's decision if analysis shows that they were, in practice, disregarded.

Thus, this Court has jurisdiction to entertain the motion and to order appropriate relief if warranted.

Respondents' next argument—that the Court must dismiss the motion because movant has failed to exhaust his administrative remedies by appealing to the BIA and awaiting a decision—is similarly misplaced. In the immigration context, "exhaustion of remedies is statutorily required only for appeals of final orders of removal." *See Quintana Casillas v. Sessions*, Civ. 17-01039-DME-CBS, 2017 WL 3088346, at *9 (D. Colo. Jul. 20, 2017) (citing *Hoang v. Comfort*, 282 F.3d 1247, 1254 (10th Cir. 2022), *cert. granted and judgment vacated on other grounds sub nom. by Weber v. Phu Chan Hoang*, 538 U.S. 1010 (2003)). Where, as here, movant challenges the procedures employed by the IJ at his bond hearing, exhaustion is merely prudential, not mandatory. *See generally Molina Ochoa v. Noem*, 1:25-cv-00881-JB-LF, 2025 WL 3125846, at *9 (D.N.M. Nov. 7, 2025) (finding that exhaustion was not a bar to consideration of habeas petition challenging denial of a bond hearing). Accordingly, whether to require exhaustion is committed to sound judicial discretion. *L.G. v. Choate*, 744 F.Supp.3d 1172, 1181 (D. Colo. 2024).

Under these circumstances, where the Court previously granted the movant's habeas petition and ordered the relief that he now seeks to enforce, exhaustion is not required. The BIA takes an average of 190 days to issue a decision on a detained noncitizen's appeal. *See* ECF No. 25-1. Respondents unlawfully detained Mr. Cervantes Arredondo without a bond hearing for over four months. He claims that his unlawful detention effectively continues to this day because respondents did not provide him with a bond hearing that complied with the burden and standard of proof mandated by this Court. *See* ECF No. 23 at 11. Thus, to demand movant wait approximately six more months for an administrative appeal "would be inappropriate because it would exacerbate [his] alleged [ ] injury—detention without a bond hearing." *Lopez-Arevelo v. Ripa*, No. EP-25-cv-337-KC, 2025 WL 2691828, at *6 (W.D. Tex. Sept. 22, 2025); *see also Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025). His individual interest "in immediate judicial review" therefore outweighs the "countervailing institutional interest favoring exhaustion," and the Court will address the merits of his motion. *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).

2. **Mr. Cervantes Arredondo is entitled to a new bond hearing to ensure compliance with this Court's Order.**

As stated above, this Court ordered that, at Mr. Cervantes Arredondo's bond hearing, DHS must bear the burden of proving danger to the community or flight risk by clear and convincing evidence. *See* ECF No. 21 at 9. In doing so, the Court

recognized that placing the burden on the government, rather than the noncitizen, is a departure from the ordinary conduct of immigration bond hearings. *Id.* at 8 (citing C.F.R. § 236.1(c)(8); *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). However, the Court concluded, in agreement with other courts in this District, that shifting the burden was necessary under these circumstances in light of the movant's prolonged unlawful mandatory detention. *See id.* at 9 (collecting cases).

After careful review of the IJ's decision, this Court is not confident that this modified procedure was followed. To be sure, the decision properly identifies that DHS bore the burden of proof at the hearing by clear and convincing evidence and finds that the Department satisfied this burden with respect to flight risk. *See* ECF No. 22-1 at 8, 9, 10, 11. The decision also correctly describes the clear and convincing standard as requiring "a firm belief or conviction" on the part of the factfinder based on the evidence before the court. *See id.* at 9 (citing *Matter of Patel*, 19 I&N Dec. 774, 783 (1988)).[2]

However, the decision then states that, in determining whether DHS has met its burden, the IJ may consider "any evidence in the record that is probative and specific," seemingly without regard for what party proffers the evidence or the order

---

[2] The decision also defines "clear and convincing evidence" as "requiring an abiding conviction that the truth of the fact is highly probable." ECF No. 22-1 at 9 (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)) (internal quotation marks omitted). The Court treats this language and the BIA's "firm belief or conviction" formulation as interchangeable.

8

in which it is considered. *Id.* at 9 (quoting *Guerra*, 24 I&N at 40-41, and citing 8 C.F.R. § 1003.19(d)). That analytical approach is appropriate in a bond proceeding where, as is ordinarily the case, the noncitizen bears the burden of proving a negative—that he is *not* a danger to the community or a flight risk. *See, e.g.*, *Matter of Siniauskas*, 27 I&N Dec. 207, 207 (BIA 2018) (the noncitizen "must establish to the satisfaction of the [IJ] … that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight"). In that posture, the IJ properly weighs all of the evidence in the record cutting for and against release simultaneously and determines, based on the totality, whether the noncitizen has carried his burden.

But where the government must prove a positive—that the noncitizen *is* a danger to the community or a flight risk—this mode of analysis risks subtly reassigning the burden to the noncitizen. To be clear, the court may consider the evidence submitted by the noncitizen. But the strength or paucity of that evidence cannot substitute for the government's obligation to establish danger or flight risk by clear and convincing evidence in the first instance. Only after the IJ is satisfied that the evidence proffered by DHS, standing on its own, establishes "a firm belief or conviction" that release on bond is not warranted should the court consider whether the noncitizen's evidence sufficiently rebuts, mitigates, or undermines the government's showing. An analysis that instead treats gaps or weaknesses in the

9

noncitizen's presentation equally with the affirmative proof submitted by the government collapses this sequence and risks impermissibly shifting the burden back to the noncitizen.

This risk appears to have been realized here. Prior to the hearing, DHS submitted four documents: Mr. Cervantes Arredondo's Form I-213, a sentencing order, and printouts with case and appearance information for two recent misdemeanor arrests.[3] ECF No. 23-2. Mr. Cervantes Arredondo responded with three items of rebuttal evidence: certificates documenting programming completed while in immigration detention, a record of disposition for a criminal case, and a sponsorship letter from his U.S. citizen-girlfriend. ECF No. 23-3. DHS did not call any witnesses or submit additional evidence at the hearing. ECF No. 23-1 at ¶8.

After DHS rested, the court declined to make any oral finding as to whether the government satisfied its burden. *Id.* at ¶9. Instead, the IJ turned to Mr. Cervantes Arredondo's counsel for a proffer of evidence. *Id.* Although he bore no burden, Mr. Cervantes Arredondo proffered to his anticipated testimony and summarized his

---

[3] A Form I-213, entitled "Record of Deportable/Inadmissible Alien," is an "official record prepared by immigration officials when initially processing a person suspected of being in the United States without legal permission" (akin to an arrest report). *Punin v. Garland*, 108 F.4th 114, 119 (2d Cir. 2024). "As a general rule, a Form I-213 is treated as inherently trustworthy and admissible [in immigration proceedings] even without the testimony of the officer who prepared it." *Pouhova v. Holder*, 726 F.3d 1007, 1013 (7th Cir. 2013); *see also Rodriguez-Casillas v. Lynch*, 618 Fed.App'x 448 (10th Cir. 2015). However, evidence that the information it contains is inaccurate, or that there were irregularities or deficiencies in its preparation, may undermine its probative value, though not necessarily require its exclusion altogether. *Id.*

rebuttal evidence. *Id.* at ¶¶10-13. The IJ then adjourned the matter for a written decision.

Because the court made no oral findings, the IJ's written decision constitutes the sole record for assessing whether the burden and standard of proof were properly applied. Although the decision identifies a number of factors the IJ considered in determining that Mr. Cervantes Arredondo presents an "unacceptable" flight risk, because it discusses the evidence submitted by both parties interchangeably, it is impossible to discern whether the government's evidence, standing alone, satisfied its clear-and-convincing burden. ECF No. 22-1 at 10.

Initially, the decision finds that there is "insufficient evidence of family, property, employment, or other financial ties to the United States." *Id*. In reaching this conclusion, the IJ relied in part on information contained within the Form I-213, which reflects that Mr. Cervantes Arredondo told ICE he was unmarried, had no children, and was self-employed at various Aurora locations. *Id.* However, in the same paragraph, the IJ also relied on perceived deficiencies in the rebuttal evidence, noting that Mr. Cervantes Arredondo had not established how long he had lived with his girlfriend and her father at a fixed address, citing her sponsorship letter. *Id.*

Next, the decision focuses on Mr. Cervantes Arredondo's "limited options to remain in the United States" and the "speculative likelihood" that he would obtain relief from removal as a factor "substantially" increasing his flight risk. *Id.*

11

Although the BIA has recognized that a noncitizen's legal avenues for avoiding deportation is relevant to flight risk, DHS submitted no evidence addressing this factor. Instead, the IJ expressed doubt as to Mr. Cervantes Arredondo's prospects for adjustment of status and asylum based on his evaluation of the evidence Mr. Cervantes Arredondo presented or failed to present.[4] *Id.*

Third, the IJ's decision turns to the evidence of Mr. Cervantes Arredondo's "history of failures to appear in criminal court and attempts to flee prosecution," which the IJ says weighs "[h]eavily" in favor of detention. *Id.* Of all the factors in the decision, this evidence most clearly originates from DHS. And undoubtedly, a record of missed court appearances and flight from prosecution is highly relevant to flight risk. *See, e.g.*, *Guerra*, 24 I&N at 40; *United States v. Baca*, 735 F.Supp.3d 1364, 1373 (D.N.M. 2024) (considering, *inter alia*, defendant's "less than stellar record of appearing at court proceedings" in determining that pretrial detention should be maintained).

Nonetheless, nothing in the decision indicates that the IJ would have found that the government carried its clear-and-convincing burden on the strength of this evidence alone. To the contrary, read as a whole, the decision compels the opposite

---

[4] The IJ's analysis of Mr. Cervantes Arredondo's asylum claim is redacted in the copy of the decision before this Court. ECF No. 22-1 at 10. Based on the surrounding context and movant's representations, however, the Court can infer that the IJ did not believe he has a meritorious claim. *See* ECF No. 23 at 6, 10; ECF No. 25 at 6.

inference: the court's determination was based on a holistic weighing of all the evidence in the record—both that supplied by Mr. Cervantes Arredondo as well as that provided by the government—in a way that is impossible to disaggregate or disentangle. Once again, that approach is entirely appropriate in the ordinary bond hearing, where the noncitizen bears the burden of proof. Not so here.

Moreover, the Court is troubled that some of the information the IJ relied upon in assessing this history appears to be inaccurate. The IJ wrote:

> *On March 11, 2025, Respondent was arrested for the crime of "Flight to Avoid (prosecution, confinement, etc.)"* After being issued a criminal summons on March 19, 2025, Respondent failed to appear in court on April 14, 2025. A warrant was issued for his arrest and Respondent was apprehended on April 20, 2025. *During this arrest, Respondent was once again charged with flight to avoid prosecution.* Less than three months later, Respondent once again failed to appear in court on June 5, 2025. A warrant was issued for his arrest and Respondent was apprehended on June 10, 2025. These recent failures to appear, *coupled with his apparent attempts to flee arrest*, are indicative to the Court that Respondent poses a significant risk of flight.

ECF No. 22-1 at 10 (internal citations omitted) (emphasis added). Of concern to this Court is that there does not appear to be a Colorado state crime named "Flight to Avoid (prosecution, confinement, etc.)," or any clearly analogous offense.[5] The sole

---

[5] The closest statutory analog the Court could identify is "Violation of Bail Bond Conditions," C.R.S. § 18-8-212. Mr. Cervantes Arredondo could not have been charged with the felony version of this offense, which requires that the defendant knowingly fail to appear in a *felony case* for which the defendant was released on bond. *See* C.R.S. § 18-8-212(1). There is no evidence that Mr. Cervantes Arredondo has ever been charged with a felony. Under this statute, a defendant

13

source for the assertion that Mr. Cervantes Arredondo was charged with this crime on two separate occasions is the Form I-213, which does not identify a provision of the Colorado Revised Statutes or provide corresponding criminal case numbers for reference.  *See* ECF No. 23-2 at 7.  Furthermore, the criminal case printouts supplied by DHS only reflect two misdemeanor drug arrests and contain no reference to charges involving flight from prosecution or attempting to evade arrest.

This discrepancy is significant because the IJ expressly relied not only on Mr. Cervantes Arredondo's failures to appear (which do appear *bona fide*), but also his purported "attempts to flee arrest."  *See* ECF No. 22-1 at 10.  Apart from the I-213, the record contains no evidence that Mr. Cervantes Arredondo attempted to evade apprehension at any point.  Whether movant tried to flee arrest bears materially on flight-risk analysis, and the Court cannot conclude that the IJ would have, or could have, found that the government met its burden absent this load-bearing assumption.[6]

---

released on bond for any felony or misdemeanor may be charged with a misdemeanor if he "intentionally fails to appear…for any proceedings for which victims or witnesses have appeared in court."  C.R.S. § 18-8-212(2).  However, this doesn't seem right either, because the evidence submitted by DHS shows that Mr. Cervantes Arredondo was not released on bond until *after* his April 21, 2025 return on warrant.  *See* ECF No. 23-2 at 17-18.  Prior to that, it appears he was released on his own recognizance.  Accordingly, he could not have been charged with violating his bail bond conditions on March 11 or April 20, 2025, because he was not out on bond at those times.

[6] To be clear, the Court is not finding that Mr. Cervantes Arredondo definitively did *not* attempt to flee arrest, only that there are substantial doubts about the accuracy of the information in the Form I-213.  At the remanded bond hearing, DHS remains free to submit other evidence, if available, regarding any alleged attempt to evade arrest.

Finally, the IJ concluded, with respect to Mr. Cervantes Arredondo's proposed sponsor, that "there is a lack of documentation to demonstrate mitigation of Respondent's flight risk," specifically as to whether his girlfriend has the financial resources to "adequately provide for him." *Id.* at 11. This language implies that the IJ concluded that Mr. Cervantes Arredondo failed to sufficiently rebut the government's clear and convincing evidence. Yet, the decision never clearly identifies what affirmative proof submitted by DHS satisfied that burden in the first instance. Viewed in light of the content and structure of the decision as a whole, and for the reasons discussed above, the Court finds that the IJ did not adhere to the burden allocation and analytical sequence required by this Court's Order.

***

Therefore, the motion to enforce judgment is GRANTED. Within ten (10) days of this ORDER, respondents must provide movant with a new bond hearing before an Immigration Judge, where both sides may submit evidence. At that hearing, the government shall bear the burden of proving, by clear and convincing evidence, that movant's release would pose a danger to the community or a risk of flight (that can't be addressed by an appropriate bond or other release conditions).

If release is denied, the Immigration Judge shall state, orally and/or in writing, what evidence submitted by the government satisfied that burden. In conducting that analysis, the Immigration Judge must first determine whether the government's

15

evidence, standing alone, meets that burden. Only after making that determination may the Immigration Judge consider whether any evidence submitted by movant rebuts, mitigates, or otherwise undermines the government's showing.

Respondents are further ORDERED to file a status report within five (5) days of movant's bond hearing, stating whether bond was granted, and if bond was denied, the reasons for that denial.

It is SO ORDERED.

Dated: December 18, 2025             BY THE COURT:

_____

R. Brooke Jackson
Senior United States District Court Judge